**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERRANCE LEWIS** | **CIVIL ACTION** |
| **v.** | **NO. 19-2847** |
| **CITY OF PHILADELPHIA, et al.** | |

## MEMORANDUM RE: DEFENDANTS' PARTIAL MOTION TO DISMISS

Baylson, J.                                                                                              April 6, 2020

## I.    Introduction

In May 1999, Terrance Lewis ("Lewis") was convicted of various charges related to the 1996 murder of Hulon Bernard Howard and sentenced to life in prison. Lewis, who was seventeen years old at the time of his conviction, served over twenty-one years of his sentence before being released. Lewis's release was precipitated by an internal review conducted by the Conviction Integrity Unit that revealed a strong likelihood Lewis was innocent of the crime for which he had been convicted. After Lewis was awarded a new trial, the Philadelphia District Attorney's office moved to nolle prosse the charges against him.

Lewis has sued two Homicide Unit police officers (the "Detective Defendants") who were involved in the investigation, as well as the City of Philadelphia (the "City," and with the Detective Defendants, the "Defendants") asserting claims under 42 U.S.C. § 1983 ("Section 1983") and Pennsylvania law. Lewis alleges that various police practices, including coercion and suggestion of false statements, suppression of exculpatory evidence, use of unduly suggestive tactics in the compilation and administration of photo arrays, and fabrication of evidence, violated his constitutional rights. The Complaint sets out six claims to relief:

- **Count I:** Malicious Prosecution in Violation of Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, asserted against the Detective Defendants;

1

- **Count II:** Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory Evidence, Coercing False Identifications Through the Use of Unconstitutional Identification Procedures and Deliberately Conducting an Investigation that Disregarded Constitutional Rights to Due Process and a Fair Trial pursuant to 42 U.S.C. § 1983, asserted against the Detective Defendants;

- **Count III:** Civil Rights Conspiracy pursuant to 42 U.S.C. § 1983, asserted against the Detective Defendants;

- **Count IV:** Failure to Intervene pursuant to 42 U.S.C. § 1983, asserted against the Detective Defendants;

- **Count V:** Municipal Liability pursuant to 42 U.S.C. § 1983, asserted against the City; and

- **Count VI:** Malicious Prosecution pursuant to Pennsylvania state law, asserted against the Detective Defendants.

Defendants have moved for partial dismissal of Lewis's Complaint, seeking dismissal of Count I to the extent it asserts a Section 1983 claim for Fourteenth Amendment malicious prosecution; Count II to the extent it asserts a Section 1983 claim for "withholding material exculpatory evidence;" Count II to the extent it asserts a Section 1983 claim for using "unconstitutional identification procedures;" Count II to the extent it asserts a Section 1983 claim for "deliberately conducting an investigation that disregarded constitutional rights;" and Count V to the extent it alleges the City's municipal liability based on violations of rights that were not "clearly established" at the time of the investigation into and prosecution of Lewis.[1] Defendants' Motion relies primarily on the assertion that the Detective Defendants are entitled to qualified immunity for the various claims they challenge.

---

[1] Defendants' proposed form of order requests that "all [of] Plaintiff's underlying claims against the moving Defendants [be] DISMISSED WITH PREJUDICE except for his Fourth Amendment and state-law claims for malicious prosecution and his Fourteenth Amendment claim for fabrication of evidence."  However, Defendants' Motion does not address Count III, the Civil Rights Conspiracy claim, or Count IV, the Failure to Intervene claim. Because Defendants have not set forth a basis for dismissing either Count III or Count IV, the Court will not dismiss or otherwise address Count III or Count IV.

For the reasons that follow, Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as discussed herein.

## II. Factual Background

The factual background is drawn from the allegations in the Complaint. The Court takes the facts alleged by Lewis as true and construes them in his favor, as is required at the motion to dismiss stage. Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

### A. Murder of Hulon Bernard Howard

On August 6, 1996, Hulon Bernard Howard ("Howard") was shot in his home in West Philadelphia. (ECF 1, Compl. ¶ 15.) At the time of the shooting, Howard was in his home with three guests—his girlfriend Lena Laws ("Laws"), Denise Williams ("Williams"), and a man identified as Omar—smoking crack cocaine. (Compl. ¶¶ 17–18.) Three young men, two of whom were armed, entered Howard's home, and an argument erupted concerning how much money Howard owed to one of the individuals. (Compl. ¶¶ 19–20.) One of the three men who entered fatally shot Howard. (Compl. ¶ 21.) By the time the responding officer, Officer Butts, arrived on the scene, only Laws remained. (Compl. ¶ 24.) Laws was transported to the Homicide Unit at the Police Administration Building, where she was interviewed about the events. (Compl. ¶ 27.)

### B. Officers' Summaries of Statements Provided by Laws

Lewis alleges that at least four officers provided statements to the Homicide Unit that included summaries of their discussions with Laws.

***Officer John Taggart***. Officer John Taggart ("Officer Taggart") transported Laws to the Homicide Unit at the Police Administration Building. (Compl. ¶ 45.) Laws told Officer Taggart that another male, "Omar," was in the house when the shooting occurred, and that the suspects escaped in a gold or tan Monte Carlo with a license plate in the back window. (Compl. ¶¶ 46–47.)

During the transport, Laws identified a car that she believed was the getaway vehicle. (Compl. ¶ 48.) Lewis alleges, upon information and belief, that this information was never provided to the prosecutor or to defense counsel. (Compl. ¶ 50.) Laws stated to Officer Taggart that the shooter's name was "Jamar." (Compl. ¶ 49.)

**Officer Shaun Butts**. Officer Shaun Butts ("Officer Butts") also had a conversation with Laws, during which she told him that "Mellow" did the shooting. (Compl. ¶ 52.) Officer Butts stated that Laws told him that one of the men accompanying Mellow went through everyone's pockets. (Compl. ¶ 57.) Laws provided Mellow's pager number to Officer Butts, but Lewis alleges upon information and belief that information about the pager number was never made available to the prosecutor or to defense counsel. (Compl. ¶¶ 63–64.)

**Sergeant Mariano Maddella**. Sergeant Mariano Maddella ("Sergeant Maddella") stated that Laws told him that there was a man named Omar and a woman named Denise in Howard's home at the time of the murder. (Compl. ¶ 74.) Laws told Sergeant Maddella that after one of the males fired a shot upward, the three males robbed everyone. (Compl. ¶ 68.) Laws identified the man who did the shooting to Sergeant Maddella as "Mello." (Compl. ¶ 70.)

**Defendant Detective James Hughes**. Roughly two hours after Laws arrived at the Homicide Unit, Defendant Detective James Hughes ("Defendant Hughes") took her recorded statement. (Compl. ¶¶ 76–77.) During this conversation, Laws identified the three men who entered Howard's home as "Stink, J.R. and Mellow." (Compl. ¶ 85.) Laws recounted how Mellow became angry about Howard's debt, Stink fired a sawed-off shotgun into the air, J.R. searched everyone, and Mellow shot Howard in the stomach. (Compl. ¶¶ 87–93.) Laws stated that she thought Mellow's name was "Jamal" because she had heard the voicemail greeting on his phone. (Compl. ¶ 97.) Laws also stated that Mellow had been to Howard's home when he was not there

earlier in the day, and that in partial satisfaction of the debt, Mellow had taken Howard's color television. (Compl. ¶ 103.) According to Lewis, the information about the stolen television was never provided to the prosecution or the defense. (Compl. ¶ 104.)

### C. The Activity Sheets and Handwritten Notes

Lewis alleges that Defendant Hughes authored an "activity sheet" outlining the steps taken in the Detective Defendants' investigation, and that because this sheet was not part of the prosecutor's file, it was not provided to Lewis's trial counsel. (Compl. ¶ 129.) Similarly, Lewis alleges that the Detective Defendants' handwritten notes were not part of the prosecutor's file and were not provided to Lewis's trial counsel. (Compl. ¶ 131.) Contained in the activity sheet and handwritten notes were information about Denise, Omar, Stink, and J.R. (Compl. ¶¶ 130, 133–141.) Lewis alleges that the Detective Defendants "intentionally and maliciously" suppressed this information "in an attempt to secure a conviction." (Compl. ¶ 142.)

### D. Laws' Previous Arrest

Lewis alleges that on March 2, 1995—over a year before Howard's murder and more than two years before Lewis's arrest—Laws was arrested for aggravated assault and weapons offenses by an officer who was later assigned to guard the scene of Howard's murder. (Compl. ¶ 143.) According to Lewis, this information was in the Detective Defendants' file, but was not a part of the prosecutor's file and was not provided to Lewis's trial counsel. (Compl. ¶ 143.) Laws' 1995 arrest was also not recorded on the public docket for the Pennsylvania Courts of Common Pleas. (Compl. ¶ 146.) Lewis alleges that the Detective Defendants "intentionally suppressed" Laws' arrest record so they could use the threat of arrest to coerce her into cooperating with their investigation and fabricating evidence against Lewis. (Compl. ¶ 147.) According to Lewis,

evidence of Laws' previous arrest for weapons violations would have also been relevant to the question of her credibility because she denied familiarity with guns at trial. (Compl. ¶ 147.)

E.    **Photo Array**

The Complaint alleges that an "unnamed source" provided Lewis's name and address to the Detective Defendants. (Compl. ¶ 148.) Again, this information was part of the Detective Defendants' file, but was not provided to Lewis's defense counsel or to the prosecutor. (Compl. ¶ 148.) Based on this information, the Detective Defendants visited Lewis's former high school, Overbrook High School, where they retrieved identification cards for eight students, one of whom was Lewis. (Compl. ¶ 149.) Lewis alleges that the Detective Defendants compiled an "unconstitutionally suggestive photo array that included children [who] did not match the description of Mr. Lewis." (Compl. ¶ 152.) When presented with this photo array, Laws identified Lewis as "Stink" who had the shotgun and confirmed that she was "absolutely sure" about her identification. (Compl. ¶ 156.) When the police located and interviewed Denise Williams in 1997, they presented this photo array to her, and she, too, picked out Lewis as the man with the shotgun. (Compl. ¶ 171.)

F.    **Lewis's Conviction for Felony Murder**

Approximately one year after Howard's murder, a warrant of arrest was issued for Lewis. (Compl. ¶ 172.) Lewis was arrested on December 20, 1997 at the age of nineteen. (Compl. ¶ 9.). Following his arrest, Lewis was tried along with Jimel Lawson and Jehmar Gladden for the murder of Howard. (Compl. ¶ 174.) Laws, the primary witness against Lewis at his trial, identified him as the man she knew by the name "Stink" and testified that he was one of the three men who was present in Howard's home at the time of the robbery and murder. (Compl. ¶ 177.) Lewis alleges that Laws' testimony was inconsistent with many of her prior statements; for example, Lewis

alleges that, contrary to her prior statements, Laws testified that Lewis sold drugs out of the basement of Howard's home, that she saw Lewis at Howard's home frequently, that two men were looking for Howard on the day of his murder, and that she "don't know much about guns." (Compl. ¶¶ 178–192.) According to Lewis, because the Detective Defendants coerced Laws into making false statements in her testimony at trial, intentionally compiled an unconstitutionally suggestive photo array, and suppressed possible exculpatory and inconsistent evidence, Lewis was unable to effectively cross-examine Laws, rebut the claims made by her and the prosecutor, and undermine Laws' credibility. (Compl. ¶¶ 197–210.)

Lewis's jury convicted him of Felony Murder, Robbery, and Criminal Conspiracy, and he received an automatic sentence of life in prison without the possibility of parole. (Compl. ¶ 212.) One month after Lewis's incarceration, his son was born. (Compl. ¶ 265.)

### G.     Lewis's Federal Habeas Proceedings and Release

In the time that passed after Lewis's trial, evidence began to emerge that demonstrated Lewis was not present at or involved in the robbery and death of Howard. In 2005, Lewis's co-defendant Jehmar "J.R." Gladden authored a handwritten, signed statement asserting that Lewis was not involved in Howard's murder. (Compl. ¶ 217.) After Gladden's disclosure, a previously unidentified witness came forward stating that she saw people leave the scene of Howard's murder immediately after it happened, and that Lewis was not one of those people. (Compl. ¶ 218.) Lewis presented these new witnesses and others at his 2009 federal habeas evidentiary hearing before Magistrate Judge Carol Sandra Moore Wells. (Compl. ¶ 223.) Magistrate Judge Wells concluded that although Lewis "may be actually innocent," federal habeas relief was unavailable because of AEDPA's strictures. Lewis v. Wilson, 748 F. Supp. 2d 409, 414 (E.D. Pa. 2010). The Honorable Judge Schiller adopted and approved the findings of Magistrate Judge Wells. Id. at 413.

Ten years after the federal habeas court denied relief, Lewis appeared before a Resentencing Court pursuant to the Supreme Court's holding that a mandatory sentence of life in prison for juvenile homicide offenders is unconstitutional and that this rule applies retroactively. (Compl. ¶¶ 226, 228, 234.)  At the resentencing hearing, the Philadelphia District Attorney's Office expressed "really grave concerns" about whether Lewis was actually guilty, and stated that "as a result of its internal investigation, the Conviction Integrity Unit has determined that there has, indeed, been a miscarriage of justice in that there is a strong likelihood that Mr. Lewis is actually innocent of the offense for which he was convicted."  (Compl. ¶¶ 235, 237.)  The Resentencing Court granted Lewis a new trial, and the Philadelphia District Attorney's Office moved to nolle prosse the charges against Lewis.  (Compl. ¶¶ 240–41.)  After twenty-one years, five months, and five days, Lewis was released from incarceration.  (Compl. ¶ 243.)

## III.     Procedural History

Lewis filed his Complaint in this Court on June 28, 2019.[2]  (ECF 1.)  On September 27, 2019, Defendants moved to partially dismiss the Complaint.  (ECF 6.)  Lewis responded in opposition on October 18, 2019.  (ECF 9.)  Defendants replied in support of their Motion on October 24, 2019.  (ECF 10.)

## IV.     Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).  The Supreme Court has instructed that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## V.     Discussion

Defendants seek dismissal of five of the theories of liability set out in the Complaint. The Court will address each of Defendants' arguments individually. Defendants' arguments, and the Court's conclusions, are as follows:

- (A) On Count I, Defendants seek dismissal of the Fourteenth Amendment theory of Malicious Prosecution. The Court will dismiss Count I to the extent it relies on the Fourteenth Amendment because the Detective Defendants are entitled to qualified immunity.

- (B) On Count II, Defendants seek dismissal of the Withholding Material Exculpatory Evidence theory. The Court will dismiss Count II to the extent it is based on withholding material exculpatory evidence because the Detective Defendants are entitled to qualified immunity on this theory.

- (C) On Count II, Defendants seek dismissal of the Use of Unconstitutional Identification Procedures theory. The Court will allow Lewis to proceed on Count II to the extent it relies on use of unconstitutional identification procedures.

- (D) On Count II, Defendants seek dismissal of the Deliberately Conducting an Investigation that Disregarded Constitutional Rights theory. The Court will dismiss Count II to the extent it is based on deliberately conducting an investigation that disregarded constitutional rights because no such

constitutional right exists and, even if it did, the Detective Defendants are shielded by qualified immunity.

- (E) On Count V, Defendants seek dismissal of the theories of <u>Monell</u> liability that relate to rights the Court has found were not "clearly established" at the time of Lewis's prosecution. The Court will dismiss any theory of municipal liability that relies on a violation of a right the Court has determined was not "clearly established." Lewis may pursue <u>Monell</u> claims for any rights that were "clearly established" or are otherwise not challenged by Defendants' Motion.

## A.    Fourteenth Amendment Malicious Prosecution (Count I)

Lewis brings his malicious prosecution claim, Count I, under both the Fourth and the Fourteenth Amendments. (Compl. ¶ 269.) Defendants seek dismissal of the malicious claim to the extent it relies on the Fourteenth Amendment, arguing that malicious prosecution claims that sound in the Fourteenth Amendment are barred as a matter of law and, in the alternative, that the Detective Defendants, who were sued in their individual capacities, are entitled to qualified immunity. (ECF 6, Motion to Dismiss at 4, 6.) The Court disagrees with Defendants' position that Lewis's Fourteenth Amendment malicious prosecution claim is categorically unavailable. However, because the legal landscape on this question is complicated and uncertain, the right was not "clearly established," which means that the Detective Defendants are entitled to qualified immunity. As a result, Count I will be dismissed to the extent it relies on the Fourteenth Amendment.

### 1.    Viability of Malicious Prosecution Claim Based on Fourteenth Amendment Right to Procedural Due Process

To state a claim under Section 1983, the plaintiff must "identify the exact contours of the underlying right said to have been violated." <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 268 (3d Cir. 2000) (quoting <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998)). In articulating the exact contours of the underlying right, the plaintiff must heed the Supreme Court's "more

specific provision" doctrine, which requires that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 519 U.S. 266, 273 (1994); see also Berg, 219 F.3d at 268 ("The Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate.").

Here, Lewis has identified two sources for his malicious prosecution claim: the Fourth Amendment and the Fourteenth Amendment. The Fourteenth Amendment iteration relies on procedural (as opposed to substantive) due process. (ECF 9, Opposition at 6.) Defendants challenge only the Fourteenth Amendment version of Lewis's malicious prosecution claim, contending that Albright's more specific provision doctrine requires rejection of Lewis's Fourteenth Amendment malicious prosecution theory since the Fourth, not the Fourteenth, Amendment provides the explicit textual authority for this tort. (Motion to Dismiss at 4–5.)

Initially, Defendants' argument that the Supreme Court's decision in Albright obviously bars Lewis's Fourteenth Amendment malicious prosecution claim ignores the difference between basing such claims on substantive due process, which Albright unambiguously forecloses, and procedural due process, which it did not reach. The Albright plurality started from the premise that "the Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights." 510 U.S. at 272. Recognizing that "substantive due process, with its scarce and open-ended guideposts," was not a proper constitutional hook, the plurality affirmed dismissal of Albright's Section 1983 claim that his right to be free of prosecution without probable cause was violated. Id. at 275. Instead, it was "the Fourth Amendment, and not substantive due process," which provided the proper standard for analysis. Id. at 271. The Albright plurality explicitly noted

that because Albright did not argue violations of the Fourth Amendment or the Fourteenth Amendment right to procedural due process, the Court was not passing on the merits of claims related to those constitutional rights.  See id. ("[Albright] does not claim that Illinois denied him the procedural due process guaranteed by the Fourteenth Amendment.  Nor does he claim a violation of his Fourth Amendment rights ….").

Following Albright, a scattered legal landscape emerged, with panels of our Court of Appeals reaching seemingly inconsistent conclusions on whether procedural due process could support a malicious prosecution claim, or whether the Fourth Amendment subsumed all Fourteenth Amendment theories (including procedural due process) of this tort.  Compare Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998) ("Albright stands for the broader proposition that a section 1983 claim may be based on a constitutional provision other than the Fourth Amendment.  However, we note that Albright commands that claims governed by explicit constitutional text may not be grounded in substantive due process."), and Washington v. Hanshaw, 552 F. App'x 169, 174 n.3 (3d Cir. 2014) (nonprecedential) ("Our cases interpreting Albright have suggested that § 1983 malicious prosecution claims may be predicated on constitutional provisions other than the Fourth Amendment, such as procedural due process."), with Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998) (concluding that under Albright, the "constitutional violation is the deprivation of liberty accompanying the prosecution," which suggests that the Fourth Amendment is the exclusive source of claims of malicious prosecution).  See also Halsey v. Pfeiffer, 750 F.3d 273, 290 n.14 (3d Cir. 2014) (noting the difference between Torres and Gallo on the viability of a Fourteenth Amendment malicious prosecution claim but declining to resolve the issue because the plaintiff abandoned the Fourteenth Amendment theory).

There is theoretical support for Lewis's argument that his Fourteenth Amendment malicious prosecution claim is cognizable. Post-Albright, the Third Circuit recognized a "temporal" distinction between the Fourth and Fourteenth amendments. Id. at 291; see also id. (noting that while the Fourth Amendment's prohibition on detention without probable cause "extends only until trial," the Fourteenth Amendment's guarantee of due process "protects defendants during an entire criminal proceeding through and after trial"). This distinction indicates that there is constitutional significance to the difference between pre- and post-trial detention. At least in theory, claims of malicious prosecution are properly rooted in different constitutional provisions, depending on when the deprivation occurred. See Thomas v. City of Phila., 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018) (Pratter, J.) (recognizing that the temporal distinction "suggests that a procedural due process right against malicious prosecution may exist").

The Court rejects Defendants' assertion that Lewis's Fourteenth Amendment malicious prosecution claim is barred as a matter of law. Contrary to Defendants' contention that the holding of Albright is "quite clear," (Motion to Dismiss at 5), numerous courts have recognized that the narrow plurality holding sowed considerable confusion. See, e.g., Gallo, 161 F.3d at 222 ("[T]he Supreme Court's failure to rule on the merits of a Fourth Amendment claim, as well as the splintered views on the constitutional implications of malicious prosecution claims expressed in the various concurrences, has created great uncertainty in the law."); Taylor v. Meacham, 82 F.3d 1556, 1561 n.5 (10th Cir. 1996) ("[A]lbright muddied the waters rather than clarified them.").

While Albright barred malicious prosecution claims that are based on substantive due process, Lewis's malicious prosecution claim sounds in the Fourteenth Amendment's right to procedural due process, and this theory was not foreclosed by Albright nor by any subsequent precedential authority. As the Third Circuit's decisions have revealed, there is not a clear answer

to the question of whether procedural due process is a viable "constitutional peg" on which to hang a theory of malicious prosecution. Albright, 510 U.S. at 270 n.4. Ultimately, it is not necessary to take a position on whether Lewis can state a claim for malicious prosecution based on the Fourteenth Amendment's right to procedural due process because, as discussed infra, the lack of clarity indicates that qualified immunity is available as a defense. See Reichle v. Howards, 566 U.S. 658, 664 (2012) ("[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all.").

### 2. Qualified Immunity Protects the Detective Defendants From Lewis's Fourteenth Amendment Procedural Due Process Claim

Government officials are immune from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is unavailable if the constitutional right is clearly established, which means that "existing precedent … placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). A two-step sequence applies to resolve claims of qualified immunity: first, the court must determine whether the facts "make out a violation of a constitutional right;" second, the court must decide whether this right was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Lower courts have discretion in deciding which of the prongs should be addressed first. Id. at 236. The burden of establishing entitlement to qualified immunity lies with the officer claiming its protections. Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010).

As reflected in Gallo, Torres, and Halsey, there was, and continues to be, confusion amongst lower courts about how the Supreme Court's decision in Albright impacts the ability to

maintain a malicious prosecution claim based on the right to procedural due process guaranteed by the Fourteenth Amendment. This uncertainty certainly existed at the time of Lewis's prosecution, which means that, even assuming a right against malicious prosecution that is rooted in principles of Fourteenth Amendment procedural due process exists, it was not "clearly established" in 1999. See al-Kidd, 563 U.S. at 743 (noting that qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions"). The Detective Defendants therefore are entitled to qualified immunity on this claim.

Recognizing the Detective Defendants' qualified immunity is consistent with opinions of other district courts within this Circuit holding that a procedural due process right against malicious prosecution (if it exists) is not "clearly established," and that as a result, qualified immunity is available as a defense. See, e.g., Braunstein v. Paws Across Pit[t]sburgh, No. 18-788, 2019 WL 1458236, at *8 (W.D. Pa. Apr. 2, 2019) (granting qualified immunity because "a Fourteenth Amendment procedural due process right against malicious prosecution was not clearly established at the time [the] [p]laintiff was charged [in 2018] …."); McCormack v. Livergood, 353 F. Supp. 3d 357, 364 (M.D. Pa. 2018) (finding that the defendant police officer was "entitled to qualified immunity with respect to [the] plaintiff's malicious prosecution claim under the Fourteenth Amendment procedural due process clause"); Wiggins v. McAndrew, No. 17-1410, 2018 WL 3727389, at *6 (M.D. Pa. Aug. 6, 2018) (holding that because "[t]he Third Circuit has not decided whether a 14th Amendment procedural due process malicious prosecution claim exists, and it is 'an unsettled question' in our Circuit," qualified immunity would bar any such claim (quoting Thomas, 290 F. Supp. 3d at 382)); Gilyard v. Dusak, No. 16-2986, 2018 WL 2144183, at *6 (E.D. Pa. May 8, 2018) (Kearney, J.) ("Qualified immunity bars [the] Fourteenth

Amendment due process claim because in 1998 (and today) our courts had not clearly established a citizen had a Fourteenth Amendment procedural due process right to be free from malicious prosecution."); Thomas, 290 F. Supp. 3d at 380 ("[A]ny procedural due process right is not (and was not at the relevant time) clearly established, meaning that the officers are entitled to qualified immunity ….").

Because the procedural due process right against malicious prosecution—assuming it exists—was not "clearly established" at the time of Lewis's prosecution, the Detective Defendants are entitled to qualified immunity. Therefore, Count I is dismissed to the extent it sounds in the Fourteenth Amendment.

### 3.     Narrow Impact of Conclusion

It is important to briefly recognize that the practical significance of this conclusion is narrow. With respect to the theories of malicious prosecution that are alleged in Count I of the Complaint—the Fourth Amendment and the Fourteenth Amendment—the Detective Defendants are entitled to qualified immunity only on the Fourteenth Amendment iteration. Defendants have not moved for dismissal on the Fourth Amendment theory, and the Court has not opined on that question. Lewis will get to discovery on Count I's malicious prosecution claim that is based on the Fourth Amendment, and the merits of this theory will be assessed on the record at summary judgment.

### B.     Withholding of Material Exculpatory Evidence (Count II)

Lewis contends that his constitutional right to due process and to a fair trial was deprived by the Detective Defendants' practice of withholding material exculpatory evidence. (Compl. ¶ 276.) The dispositive question in relation to Lewis's withholding of evidence theory is whether the Detective Defendants' obligation to submit exculpatory information to the prosecutor (and the

corresponding right of Lewis to receive this information under Brady) was clearly established at the time of the 1997 investigation. See Fields v. City of Phila., 862 F.3d 353, 361 (3d Cir. 2017) ("To determine whether the right is clearly established, we look at the state of the law when the [investigation] occurred."). If the right was not clearly established, then the Detective Defendants are entitled to qualified immunity and this theory must be dismissed.

Appreciating the development of the law related to the obligations of the Detective Defendants requires understanding the law concerning the obligations of prosecutors. The Supreme Court held in Brady v. Maryland, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Although some circuits had recognized "that police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor" at the time of the investigation in this case, that right was not recognized by our Court of Appeals until the Third Circuit's 2005 decision in Gibson v. Superintendent of New Jersey Department of Law & Public Safety-Division of State Police, 411 F.3d 427 (3d Cir. 2005). Id. at 443. Therefore, assuming that Third Circuit case law is a source of "clearly established" rights and obligations,[3] the Detective Defendants' duty to turn over the exculpatory evidence was not clearly established until 2005—eight years after the investigation into Lewis. Because the right was not clearly established at the time of the investigation, the Detective Defendants are entitled to qualified immunity.

---

[3] The Supreme Court has never explicitly confirmed that binding circuit precedent is a source of "clearly established" law. See City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (per curiam) (Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity ….") (emphasis added)); Carroll v. Carman, 574 U.S. 13, 17 (2014) (per curiam) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law …. " (emphasis added)); Reichle, 566 U.S. at 665 ("Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law …." (emphasis added)).

Recognizing the Detective Defendants' entitlement to qualified immunity on Lewis's withholding of evidence theory is consistent with the approach taken by Judge Kearney in a recent case with similar facts and a nearly identical timeline. See Gilyard, 2018 WL 2144183, at *4 (stating that the court's task was to "examine the clearly established law at the time of [the plaintiffs'] arrest and trial in the end of 1997 and into 1998"). Gilyard focused on the Third Circuit's statement in Gibson that "in 2000, this Court was only able to assume that police officers 'have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists.'" Id. at *5 (quoting Gibson, 411 F.3d at 444). Judge Kearney reasoned that if the right was not clearly established in 2000 then, by definition, it was not clearly established in 1998, so the defendant officers in that case were entitled to qualified immunity. Gilyard, 2018 WL 2144183, at *5. Here, too, the Detective Defendants cannot be held liable under Section 1983 for their alleged withholding of evidence because that conduct occurred in 1997, approximately eight years before the right was "clearly established" by the Third Circuit in Gibson.

None of the arguments that Lewis makes in opposition are persuasive. Lewis asserts that the Supreme Court "extended" the obligations of Brady to police officers in Kyles v. Whitley, 514 U.S. 419 (1995), but Lewis mischaracterizes the Court's holding. Kyles, which concerned the obligations of prosecutors, held that evidence in the hands of the police can be attributed to the prosecution team for Brady purposes. See id. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); see also Gibson, 411 F.3d at 442 (citing Kyles for the proposition that "[t]he prosecutor's duty to disclose extends beyond the information that he or she possesses, to include information in the hands of police investigators working on the case"). Kyles did not concern the obligations of police officers, so its holding is inapposite in relation to the obligations

of the Detective Defendants in this case. Lewis's reference to cases from various Pennsylvania state courts that concern the duties of prosecutors under Brady (not the duties of police officers) is misplaced for the same reason. See, e.g., Commonwealth v. Abu-Jamal, 720 A.2d 79, 92 n.17 (Pa. 1998) (noting that Brady and Kyles prevent "the prosecution's deliberate suppression of evidence favorable to the defense" (emphasis added)).

Because the state of the law regarding the Brady obligations of police officers in 1997 was not "so clearly established that 'every reasonable official would have understood that what he [wa]s doing violate[d] that [obligation],'" the Detective Defendants are entitled to qualified immunity on Count II's withholding of evidence theory. Fields, 862 F.3d at 360–61 (quoting Reichle, 566 U.S. at 664).

C. **Use of Unconstitutional Identification Procedures (Count II)**

Lewis argues that his right to due process and to a fair trial was deprived by the Detective Defendants' alleged use of unconstitutional identification procedures. (Compl. ¶ 275.) The Court concludes that Lewis has sufficiently alleged a violation of a clearly established constitutional right, so this theory of liability is entitled to survive dismissal.

Supreme Court case law dating to the 1970s establishes that, as a constitutional matter, the use of unduly suggestive tactics by law enforcement conducting an identification exercise constitutes a deprivation of due process. See Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (explaining that an identification procedure violates due process if "under all the circumstances of th[e] case there is 'a very substantial likelihood of irreparable misidentification'" (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)); see also Neil v. Biggers, 409 U.S. 188, 198 (1972) ("It is the likelihood of misidentification which violates a defendant's right to due process …. Suggestive confrontations are disapproved because they increase the likelihood of

misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous."); <u>Foster v. Cal.</u>, 394 U.S. 440, 442 (1969) ("[J]udged by the totality of the circumstances, the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law." (internal quotation marks and citations omitted)).

Defendants' invocation of qualified immunity is unavailing.  Defendants argue that the suggestive identification theory of Section 1983 liability should be dismissed because "the lack of case law permitting a plaintiff to sue police officers for using suggestive identification procedures entitles [the Defendant] Detectives … to qualified immunity."  (Motion to Dismiss at 8.)  This argument misapprehends the test for qualified immunity.  The test is not whether there is case law permitting a Section 1983 claim for the violation of a particular constitutional right (though the presence or absence of case law may be relevant to the question of whether a constitutional right exists); rather, the test for purposes of ascertaining entitlement to qualified immunity is whether "the law clearly proscribed the actions the [officer allegedly] took."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528 (1985).

On the strength of <u>Manson</u>, <u>Neil</u>, and <u>Foster</u>, the right against unduly suggestive identification procedures was clearly established by binding Supreme Court case law in 1997 when the allegedly unconstitutional photo array was administered in this case, which precludes the Detective Defendants from relying on qualified immunity.  <u>See, e.g.</u>, <u>Gregory v. City of Louisville</u>, 444 F.3d 725, 747 (6th Cir. 2006) (concluding that qualified immunity was properly denied because the officer "reasonably should have known that use of the identification would lead to a violation of [the] [p]laintiff's right to a fair trial"); <u>Cosenza v. City of Worcester, Mass.</u>, 355 F. Supp. 3d 81, 97 (D. Mass. 2019) (rejecting qualified immunity because "it was clearly established

that the unnecessarily suggestive identification procedures were unconstitutional at the time of [the] [p]laintiff's conviction [and] it is patently obvious that a reasonable officer would have understood that the practices utilized by [the officers] fell within the scope of this proscribed conduct"); Sanders v. City of Chi. Heights, No. 13-221, 2016 WL 2866097, at *10 (N.D. Ill. May 17, 2016) (finding that the defendant officers' qualified immunity argument failed because "it has been clearly established since at least 1977 that a criminal defendant has a due process right not to be subjected to unduly suggestive identifications that taint his criminal trial").

While Defendants are correct that "an unduly suggestive identification procedure itself does not violate any of the defendant's constitutional rights and cannot alone form the basis of a § 1983 claim," here Lewis alleges a connection between the unduly suggestive photo array and the deprivation of his rights at trial. (Motion to Dismiss at 8 (quoting Hales v. Fell, No. 12-3495, 2013 WL 2256132, at *4 (E.D. Pa. May 23, 2013) (Sanchez, J.)).) Specifically, Lewis alleges that the "Detective[] [Defendants] intentionally compiled an unconstitutionally suggestive photo array that included children [who] did not match the description of Mr. Lewis," (Compl. ¶ 152), that the identification based on this photo array was used to support the affidavit of probable cause for Lewis's arrest, (Compl. ¶ 173), and that this photo array contributed to his inability to effectively cross-examine Laws at trial. (Compl. ¶¶ 196–210.) For pleading purposes, this is enough to state a plausible claim to relief. Cf. Vega v. Ripley, 571 F. App'x 96, 99 (3d Cir. 2014) (nonprecedential) (rejecting the plaintiff's argument that photo array was unnecessarily suggestive because "[t]he only noticeable difference between [the plaintiff's] photo and the other photos is the color of background, which did not render the array unnecessarily suggestive").

Because Lewis's right against the use of an impermissibly suggestive photo array in his prosecution was "clearly established" by 1997, the Detective Defendants are not shielded by qualified immunity on this theory of Section 1983 liability.

### D. Deliberately Conducting an Investigation that Disregarded Constitutional Rights (Count II)

Defendants argue Lewis's theory that is based on "deliberately conducting an investigation that disregarded constitutional rights" is not actionable. (Motion to Dismiss at 9.) The Court agrees and this theory of Section 1983 liability will be dismissed.

First, numerous judges in this district have recognized that an inadequate police investigation does not independently violate any constitutional right. See, e.g., Thomas, 290 F. Supp. 3d at 386 (holding that "there is no independent constitutional cause of action for 'failure to investigate'"); Whitehead v. City of Phila., No. 13-2167, 2014 WL 657486, at *2 (E.D Pa. Feb. 19, 2014) (Rice, M.J.) ("There is no constitutional right to a police investigation."). Lewis cites Wright v. City of Philadelphia, 229 F. Supp. 3d 322 (E.D. Pa. 2017) as an example of a "failure to investigate" claim that survived a Rule 12 challenge, but in that case Judge Pratter explicitly declined to recognize this cause of action. See id. 332 at n.3 ("It certainly remains to be seen whether there is an independent cause of action under the Fourteenth Amendment … for 'failing to conduct a constitutionally adequate investigation,' and the Court will not affirmatively recognize one here at this time." (emphasis added)).

Second, even if this type of right exists, because it was not "clearly established" in 1997 the Detective Defendants are shielded by qualified immunity. Lewis invokes two out-of-circuit cases in support of his argument that "courts have denied qualified immunity to police where evidence could support a finding that defendant police officers deliberately ignored exonerating information indicating they had arrested the wrong person." (Opposition at 12.) While neither

22

Supreme Court precedent nor binding Third Circuit precedent is necessary for law to be "clearly established," the two cases cited by Lewis do not demonstrate a "robust consensus of cases of persuasive authority in the Courts of Appeals." Fields, 862 F.3d at 361 (internal quotation marks and citations omitted).

The absence of precedential Third Circuit or Supreme Court authority and the lack of a robust consensus amongst the Courts of Appeals establishing the right to a constitutionally sufficient investigation compels the conclusion that, even assuming this right exists, it was not "clearly established" in 1997. See Thomas, 290 F. Supp. 3d at 386 ("Even if … a constitutional cause of action [for inadequate investigation] exists, it is not—and certainly was not in the mid-1990s—clearly established, meaning that the defendants are (or would be) shielded by qualified immunity anyway."); see also Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (noting that for qualified immunity to apply, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited").

Whether or not a constitutional right to an adequate investigation exists (at least two district courts in this Circuit have found such a right does not exist), the Detective Defendants are entitled to qualified immunity because this right was not "clearly established" at the time of the 1997 investigation.

### E.     Monell Claims (Count V)

Defendants argue that there can be no claim of municipal liability against the City for any right that was not clearly established. (Motion to Dismiss at 11.) This argument applies to the Fourteenth Amendment malicious prosecution theory, the withholding of material exculpatory

evidence theory, and the faulty investigation theory. These are the theories that the Court has determined implicate qualified immunity that shields the Detective Defendants.

Imposing liability on a municipal decisionmaker requires that the plaintiff "identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). The "stringent" deliberate indifference standard requires a showing that the "municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011); see also Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 403–04 (1997) (noting that a municipality should be held liable "only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality").

Several courts of appeals have held that if a right is not clearly established, a municipal entity cannot be deliberately indifferent to it. See Bustillos v. El Paso Cty. Hosp. Dist., 891 F.3d 214, 222 (5th Cir. 2018) (affirming dismissal of a Monell claim that was based on a right that had not been clearly established); Arrington-Bey v. City of Bedford Heights, Ohio, 858 F.3d 988, 995 (6th Cir. 2017) ("The absence of a clearly established right spells the end of [the plaintiff's] Monell claim."); Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 393 (8th Cir. 2007) ("[W]e agree with the Second Circuit and several district courts that a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established."); Young v. Cty. of Fulton, 160 F.3d 899, 904 (2d Cir. 1998) ("[A claim of municipal liability] cannot be sustained unless the employees violated a clearly established federal constitutional right."). Judge Pratter recently agreed with the Szabla court and others that have rejected Monell liability where the right was not clearly established at the time of

the alleged violation. See Thomas, 290 F. Supp. 3d at 387 ("Because the rights at issue in the claims for Fourteenth Amendment malicious prosecution, Brady violations, and failure to investigate were not clearly established in 1994, the Court dismisses the Monell count as to these claims.").

This Court concurs with Judge Pratter and the Courts of Appeals holding that a right that is not clearly established cannot support municipal liability. If the right at issue is not "clearly established," then any assertion of deliberate indifference is substantially undercut because, by definition, there are no "clear constitutional guideposts" for the municipality to follow in developing policy. City of Canton, Ohio v. Harris, 489 U.S. 378, 397 (1989) (O'Connor, J., concurring). Therefore, the City will not have to answer for Lewis's theories of liability that rely on a right that was not "clearly established"—that is, for Lewis's claims for Fourteenth Amendment malicious prosecution; withholding of material exculpatory evidence; and deliberately conducting an investigation that disregarded constitutional rights.

The import of this holding is limited. Defendants concede that the fabrication of evidence and Fourth Amendment malicious prosecution claims will proceed against the City. (Motion to Dismiss at 12.) In addition, because the Court has concluded that the Detective Defendants are not protected by qualified immunity on Count II's unconstitutionally suggestive identification theory, and because Defendants have not provided any other reason why a Monell claim based on this theory is unsupportable, there may be municipal liability against the City for that theory as well. Therefore, Lewis will get to discovery on his Monell claims in Count V, but the City's municipal liability will be limited to violations of rights that were "clearly established" at the time of the investigation into Lewis and his subsequent prosecution.

## VI.    Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.  Count I is dismissed to the extent it relies on the Fourteenth Amendment, Count II is dismissed to the extent it relies on theories of withholding of evidence and deliberately conducting an investigation that disregarded constitutional rights, and Count V is dismissed to the extent it relies on alleged violations of rights that were not clearly established.  The dismissal is without prejudice in the event there is a change in the governing law about qualified immunity or other issues.

An appropriate order follows.

O:\CIVIL 19\19-2847 Lewis v City of Phila\19cv2847 Memorandum Re Defendants' Motion to Dismiss.docx